IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-001893-CMA

MARALEX RESOURCES, INC., a Colorado corporation,
ALEXIS M. O'HARE, and
MARY C. O'HARE,

    Plaintiffs,

v.

DAVID BARNHARDT, in his official capacity as Acting Secretary of the United States Department of the Interior,[1]
THE UNITED STATES DEPARTMENT OF THE INTERIOR, and
THE UNITED STATES OF AMERICA,

    Defendants.

## ORDER AFFIRMING IN PART AND REJECTING IN PART AGENCY DETERMINATION

This matter is before the Court upon the Court of Appeals for the Tenth Circuit's Opinion (Doc. # 39) reversing and remanding this Court's Order Affirming Agency Determination (Doc. # 31). Consistent with the Court of Appeals' Order, the Court now affirms in part and rejects in part determinations of the Department of the Interior and its Interior Board of Land Appeals ("IBLA"). It affirms the IBLA's conclusion that the Bureau of Land Management ("BLM") had authority to inspect the wells at issue, owned by Plaintiff Maralex Resources, Inc. ("Maralex"). However, the BLM lacks authority to

---

[1] In accordance with Federal Rule of Civil Procedure 25(d), the Court orders that David Barnhardt, Acting Secretary of the Department of the Interior, be substituted for Ryan Zinke and Sally Jewell, former Secretaries of the Department of the Interior.

require an operator or landowner to provide it with a key to the landowner's locked gates or to allow the BLM to place its own locks on the landowner's gates.

I. **PROCEDURAL HISTORY**

The Court detailed the factual background of this case in its Order Affirming Agency Determination (Doc. # 31), as did the Court of Appeals when it reversed that Order in *Maralex Resources, Inc. v. Barnhardt*, 913 F.3d 1189 (10th Cir. 2019), *see* (Doc. # 39). This Court's previous Order and the Court of Appeals' Opinion are incorporated by reference, and the factual background explained therein need not be repeated here. The Court recounts only the facts necessary to address the Court of Appeal's instructions on remand.

Briefly, this matter concerns a 320-acre parcel of land in La Plata County, Colorado (the "Parcel"). Plaintiffs Alexis O'Hare and Mary O'Hare (together, the "O'Hares") own the surface and mineral estate in a 120-acre tract of land (the "O'Hare Tract") of the Parcel. In 1995, the O'Hares issued Maralex a private oil and gas lease for the O'Hare Tract. The Southern Ute Indian Tribe holds the surface and mineral estate in an 80-acre tract of land of the Parcel; the remainder is privately owned by the O'Hares and others. In 1996, all parties "communitized" their coal and gas interests in the Parcel under the terms of a Communitization Agreement, pursuant to which they agreed to develop and operate the Parcel as a single entity. The Southern Ute Indian Tribe and the Bureau of Indian Affairs approved the Communitization Agreement on May 1, 1996.

The four wells at issue in this matter are operated by Maralex and are located on the O'Hare Tract, where they are enclosed by fences and locked gates. The four wells draw minerals from the coal formation below the area's surface; the production of these minerals is, under the terms of the Communitization Agreement, allocated to all of the oil and gas interests, including that of the Southern Ute Indian Tribe.

On February 11, 2013, a BLM technician contacted Maralex to gain access to the four wells so that he could inspect them. Maralex directed the BLM technician to Mickey O'Hare, who in turn told the technician that the BLM did not have a right to be on his land to inspect the wells and that "the surface and minerals were owned by him." The BLM technician and a BLM law enforcement officer attempted to inspect the wells but were blocked from doing so by a locked gate on February 22, 2013.

On February 26, 2013, the BLM issued four Notices of Incidents of Noncompliance ("INCs") to Maralex for refusing to allow inspection of the wells. The BLM alleged in the INCs that Maralex was in violation of 43 C.F.R. § 3162.1(b) and gave Maralex one month to provide the BLM with access to the wells. A BLM official wrote on the INCs, "For corrective action, I will need a key to access the location or be able to put a BLM lock in with it." This demand for corrective action is central to the issues before the Court of Appeals and now again before this Court. Maralex and the O'Hares sent a letter appealing the four INCs to the BLM, which the BLM treated "as a request for State Director's review (SDR) . . . under 43 CFR 3165.3."

On July 9, 2013, the BLM's Deputy State Director for Energy, Lands, and Minerals of Colorado replied to each of Maralex's assertions in a letter. Relevant here,

3

the BLM cited the Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA"), 30 U.S.C. § 1711, as authorizing the BLM to "perform the production related inspection which necessitates physical access to the subject wells and their associated facilities without advance notice." The BLM stated that "the four INCs covering denied access to the subject wells were properly issued and are upheld" and ordered Maralex to "provide the BLM Tres Rios Field Office access without advance notice as required by the INCs and the regulations." Maralex sent the BLM a Notice of Appeal of the BLM's July 9, 2013 decision and a Statement of Reasons for Appeal shortly thereafter.

Some two years later, on July 10, 2015, the IBLA issued a written decision affirming the BLM's July 9, 2013 decision. *See* (Doc. # 1-1.) The IBLA relied on FOGRMA, 30 U.S.C. §§ 1711(a) and 1718(b), as authorizing the BLM's actions. The IBLA did not address whether Plaintiffs were required to provide the BLM with a key to locked gates or to permit the BLM to place its own locks on the gates.

Plaintiffs initiated this action against Defendants on September 1, 2015, seeking reversal of the IBLA's decision, as well as declaratory relief. (Doc. # 1.) Relevant here, Plaintiffs argued in their Opening Brief that, assuming arguendo that the BLM has authority pursuant to 30 U.S.C. § 1718(b) to conduct inspections of oil and gas facilities on fee lands without advanced notice, "there is no statutory or regulatory requirement that an operator or landowner provide the BLM with a key to the landowner's locked gates or allow the BLM to place its own locks on the landowner's locked gates." (Doc. # 21 at 19–21.) Plaintiffs also argued that if such a requirement existed, it would constitute "an unreasonable search and seizure of [the landowner's] fee lands in

4

violation of their rights guaranteed by the Fourth Amendment" and would constitute "a physical taking of [the landowner's] property in violation of their substantive due process rights guaranteed by the Takings Clause of the Fifth Amendment." (*Id.* at 21–24.)

The Court held in its October 19, 2017 Order Affirming Agency Determination that the IBLA's "finding that [FOGRMA] authorizes [BLM] representatives to conduct warrantless, unannounced inspections of oil wells on Plaintiffs' fee lands was not arbitrary, capricious, or otherwise contrary to law." (Doc. # 31 at 1.) The Court declined to address Plaintiffs' statutory and constitutional concerns about the corrective action the BLM ordered—keys to Plaintiffs' locks or access to put its own locks on Plaintiffs' gates—because Plaintiffs "did not present to the IBLA th[at] particular argument" and thereby waived it for purposes of the appeal. (*Id.* at 11–12.)

Plaintiffs appealed this Court's Order Affirming Agency Determination to the Court of Appeals on November 17, 2017. *See* (Doc. # 34.)

## II. **DISCUSSION**

### A. THE COURT OF APPEALS' OPINION

Plaintiffs raised two issues on appeal:

(1) whether they waived their argument that the BLM lacked authority to require them to provide the BLM with keys to the locked gates on the O'Hares' private property or, alternatively, to allow the BLM to place its own locks on those gates; and (2) whether the BLM has statutory or regulatory authority to require plaintiffs to provide the BLM with keys to locked gates on privately-owned lands or, alternatively, to allow the BLM to place its own locks on such gates

*Maralex*, 913 F.3d at 1195–96.

As to the first issue, the Court of Appeals stated that "it is a close question whether [P]laintiffs presented their argument to the IBLA that BLM exceeded its statutory and regulatory authority by requiring a key or lock in the INCs." *Id.* at 1196–97. The Court of Appeals "nevertheless [chose] to exercise [its] discretion to address that issue" on the grounds that doing so was in "the interests of justice." *Id.* at 1197–98.

The Court of Appeals began by "examining the overall statutory and regulatory scheme for inspections of oil and gas lease sites that implicate Indian mineral interests." *Id.* at 1199. It held that Section 1718(b) of FOGRMA "does not afford the BLM with authority to inspect lease sites on privately-owned lands," such as the O'Hare Tract. *Id.* at 1201. However, it determined that the regulatory provisions issued by the Secretary of the Department of the Interior allow that "for lease sites on privately-owned lands, BLM representatives may not independently enter the sites, but instead must seek entry (but do not have to give advance notice) from the operating rights owner or operator and the operating rights owner or operator . . . is obligated to allow such entry." *Id.* at 1203. The Court of Appeals held that accordingly, "the BLM had authority to inspect the wells at issue." *Id.*

Turning to the merits of the second issue on appeal, the Court of Appeals then considered "whether BLM had authority to require Maralex to provide BLM with 'a key to access the location or' allow BLM to install its own locks." *Id.* at 1203–04. Citing two regulations outlining "the parameters of inspections of lease sites on privately-owned lands," 30 C.F.R. §§ 3162.1 and 3163.3, the Court of Appeals explained that the regulations do not provide any authority for the BLM to require a landowner or operator

6

"to (a) provide BLM with a key to a lease site on privately-owned land, or (b) to install a BLM-lock on the gates to such a lease site." *Id.* at 1204. Rather, the BLM "must rely on the operating rights owner or operator to afford them entry to [a] lease site." *Id.*

The Court of Appeals concluded:

> We REVERSE and REMAND to the district court with directions to enter judgment in favor of plaintiffs on their claim that the BLM lacks authority to require plaintiffs to provide the BLM with a key to access the wells at issue or to allow BLM to install its own locks.

*Id.*

## B. AMENDED JUDGMENT ON REMAND

On remand, the Court first observes that, in its holding that "the BLM had authority to inspect the wells at issue," *id.* at 1203, the Court of Appeals implicitly agreed with this Court's conclusion that "the IBLA's finding that FOGRMA grants the BLM representatives warrantless, unannounced authority to inspect the wells on Plaintiffs' fee lands was not arbitrary, capricious, or otherwise contrary to law" (Doc. # 31 at 15). The Court therefore need not amend its judgment to the extent it upheld the BLM's authority to inspect Plaintiffs' wells.

However, the Court of Appeals explicitly reversed this Court's assessment of Plaintiffs' argument that the BLM was without authority to impose the corrective action—the keys or locks requirement—it had ordered in the four INCs. *Maralex*, 913 F.3d at 1204. The Court accordingly amends its judgment regarding the corrective action. It finds in favor Plaintiffs on their argument that the BLM lacks authority to require them to provide the BLM with a key to access the wells at issue or to allow the BLM to install its own locks, consistent with the Court of Appeals' analysis.

7

## III. **CONCLUSION**

The Court reaffirms that the IBLA's finding that FOGRMA grants the BLM authority to conduct warrantless, unannounced inspections of Plaintiffs' four wells was not arbitrary, capricious, or otherwise contrary to law.

However, the Court now holds that the BLM was without authority to require Plaintiffs to provide the BLM with a key to access the at-issue wells or to allow BLM to install its own locks. Its INCs imposing such corrective action, and the reviews thereof, were contrary to law to the extent they required keys or locks.

In sum, the Court now AFFIRMS IN PART and REJECTS IN PART determinations of the Department of the Interior and its IBLA.

The parties shall bear their own fees and costs.

DATED: March 21, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge